h CARAWAY, J.
These three cases concern the sufficiency of the statement of plaintiffs claim before the medical review panel in a malpractice action. They have been consolidated for our review by remand from the Louisiana Supreme Court. Arnold v. Dona, 01-3073 (La.3/15/02), 812 So.2d 623; Perritt v. Dona, 01-3175 (La.3/15/02), 812 So.2d 624; and Richmond v. Brown, 2002-0241 (La.3/15/02), 812 So.2d 624. Two of the three cases involve the defendants’ use of written interrogatories for discovery which this court, in its initial supervisory rulings, found improper. We reaffirm those rulings and our initial supervisory ruling in the third case for the following reasons.

Facts and Procedural History

The three separate actions in this consolidated appeal were all instituted as proceedings in the district court incidental to pending medical review panel inquiries under the Medical Malpractice Act (“MMA”). La. R.S. 40:1299.41, et seq. The procedural contexts of the actions as instituted by the defendant/health care providers were not uniform; the rulings by the separate district judges conflicted; and separate panels of this court initially reviewed those rulings upon the parties’ applications for supervisory review. Nevertheless, the issue which was common in all actions concerns the sufficiency of the statement of the material facts of plaintiffs demand which is necessary for the presentation of a claim to the medical review panel.
| gIn Harold Ross Perritt, et ux. v. Grant Dona, M.D. (hereinafter Perritt), the health care provider filed a pleading entitled “Motion to Compel” to require the plaintiffs to provide a more detailed description of the alleged malpractice by amendment of plaintiffs letter to the Patients’ Compensation Fund (“PCF”) and the Commissioner of Administration. Such a letter commences the procedure for the formation of the medical review panel. La. R.S. 40:1299.47(A); Holmes v. Lee, 35,021 (La.App.2d Cir.9/28/01), 795 So.2d 1232. The PCF letter was filed in the record and its caption and description of plaintiffs’ claim provide, in pertinent part, as follows:
RE: * * *
Defendant:
Grant Dona, M.D.
Dates of Treatment: February 29, 2000 through March 15, 2000
Dates of Malpractice: Beginning February 29, 2000
Rowland A. Torres, M.D.
*1225 Dates of Treatment: March 15, 2000 — May 4, 2000 ■
Dates of Malpractice: Beginning March 15, 2000
St. Francis Medical Center
Dates of Treatment: Beginning March 13, 2000
Dates of Malpractice: Beginning March 13, 2000
Healthsouth Rehabilitation Hospital Dates of Treatment: March 29, 2000 — May 5, 2000
Dates of Malpractice: Beginning March 29, 2000
Dear Mr. Drennen and Mrs. Jackson:
This letter shall confirm that we have been retained by the above referenced claimants with regard to a medical negligence claim against the defendants listed above arising out of the care and treatment provided to Harold Ross Per-ritt beginning on the dates indicated hereinabove. Based upon the medical information provided to date, claimants allege that the defendants deviated from the applicable standard of appropriate 13medical care regarding the care and treatment which they provided to Harold Ross Perritt.
* * *
Following a contradictory hearing, the trial court in Perritt ruled that the PCF letter “does not contain a recitation of facts or allegations (surrounding the alleged malpractice) sufficient enough to afford defendants proper ‘notice.’ “ The court ordered plaintiffs to amend the PCF letter. Thereafter, the plaintiffs’ application to this court for supervisory review of the ruling was denied.
In Roger Arnold, M.D., et ux. v. Grant A. Dona, M.D. (hereinafter Arnold), the health care provider instituted the action with a “Petition to Compel Discovery Responses.” The petition alleged that the plaintiffs had instituted a medical review panel proceeding which remains pending. The petition sought to compel a response to the following interrogatory (hereinafter “Interrogatory No. 1”), which had previously been propounded to plaintiffs:
Please state each and every respect in which you contend Dr. Grant Dona breached the standards of care applicable to him in connection with your care, being specific as to what it is you claim he did that she (sic) should have done, or did not do that she (sic) should have done.
The Arnolds had given a limited answer to the interrogatory, stating that Dr. Arnold “suffers from osteomyelitis which plaintiff believes was caused, or substantially contributed to, by substandard care on the part of Dr. Dona.” The Arnolds responded to Dr. Dona’s action with a motion for a protective order.
|4A contradictory hearing was held in Arnold. The Arnolds’ letter to the PCF instituting the medical review panel proceeding was not introduced into evidence. The trial court later issued a written opinion denying Dr. Dona’s petition and issuing the protective order requested by the Ar-nolds. Dr. Dona’s application for supervisory review to this court was denied.
In Ella Richmond v. Douglas C. Brown, M.D. (hereinafter Richmond), the opposing parties were represented by the same counsel as in Arnold, and the proceedings in district court conducted in a like manner. The same interrogatory as quoted above (Interrogatory No. 1) was posed to Ms. Richmond concerning Dr. Brown’s negligent actions. She answered that she is not an expert regarding the applicable medical standard and that “all that plaintiff knows is that she suffered harm or complications which she simply did not feel should have occurred under the circumstances .... ” In addition, Ms. Richmond refused to answer the following interrogatory (Interrogatory No. 2):
*1226 Please state, with respect to each of the allegations of substandard care made in your answers to Interrogatory No. 1, what it is that you claim the standard of care applicable to Dr. Brown requires, and your basis for so defining the standard of care.
Finally, Ms. Richmond refused to answer another interrogatory (Interrogatory No. 4) requesting her to identify the physical harm she suffered.
Following a contradictory hearing, where no evidence of the plaintiffs PCF letter was introduced, the trial court granted Dr. Brown’s petition to compel and ordered Ms. Richmond to “allege all ... grounds of | ¡^malpractice.” The trial court’s oral ruling did not specifically address Interrogatory No. 2 or Interrogatory No. 4, and no written judgment was rendered. Upon Ms. Richmond’s application for supervisory review, we granted her relief reversing the trial court’s ruling.
The three parties aggrieved by our supervisory review rulings then sought supervisory review from the Louisiana Supreme Court. The court effectively consolidated the separate cases into a single appeal, granted the aggrieved parties’ writ applications, and rendered a per curiam opinion directing this court to address in an opinion, “the common question of whether a defendant in a case pending in the medical review panel may compel the plaintiff to respond to interrogatories requesting information on the standard of care allegedly breached by the defendant.” Perritt v. Dona, supra. The court also directed this court to address the ruling in Solomon v. Medical Ctr. of Louisiana at New Orleans, 97-0783 (La.App. 4th Cir.5/14/97), 694 So.2d 1229.

Discussion

Significantly, the Perritt case does not involve a discovery dispute concerning unanswered interrogatories like the other two cases consolidated herein and the Solomon decision of the Fourth Circuit.[1] Likewise, the trial court ruling in Perritt did not order the plaintiffs to set forth the “standard of care allegedly breached by the defendant.” The health care providers in Perritt instituted their district court action seeking a more specific statement Lof the plaintiffs’ claim. They asserted that the claim was vague and did not give sufficient notice of the medical malpractice cause of action. The same type of information is requested by the interrogatories in Arnold and Richmond. Therefore, the common issue of these three cases which have been consolidated by our highest court for our review concerns the sufficiency of the statement of material facts of the plaintiffs claim as presented to the medical review panel. Additionally, as indicated by our initial rulings in these cases, which we now reaffirm, the procedural posture in which this issue is raised at the district court is significant under the MMA.
No medical malpractice action against a health care provider covered by the MMA “may be commenced in any court before a claimant’s proposed complaint has been presented to a medical review panel.” La. R.S. 40:1299.47(B)(l)(a)(i). Rejecting claims of unconstitutionality of the medical review panel process in Everett v. Goldman, 359 So.2d 1256 (La.1978), the supreme court discussed the proceeding, as follows:
Likewise, the requirement that malpractice claims be filtered through a medical *1227 review panel is not unreasonable and seems to be a rational effort to accomplish a plausible goal. A panel determination adverse to a malpractice claimant’s interest does not preclude his filing a lawsuit. Such a determination would seem to exert subtle pressure on the claimant in a case of little worth to abandon or to settle his claim reasonably, thereby saving the defendant and his insurer the time, expense and worry of apparently needless litigation. And a favorable panel decision will probably aid the claimant in exerting pressure on a defendant to settle the case reasonably, thus treating the malpractice victim to savings in time and expense and to avoidance of possibly risky litigation. In those cases, which do go to trial, a plaintiff successful before the panel will benefit from the evidentiary support of the panel’s finding and the testimony of the panel members.
^Reaffirming Everett in Derouen v. Kolb, 397 So.2d 791 (La.1981), the court said:
... [T]he medical review panel is not a judge nor a jury, but merely a body of experts assembled to evaluate the plaintiffs claim and to provide the courts and the parties with an expert opinion. Absent any evidence to rebut the legislative goals of encouraging the prompt settlement of good claims, the abandonment of poor claims and, most importantly, the fostering of prompt, professional medical services to the people of Louisiana, we see the continued use of the medical review panel as proper.
Various provisions within Section 1299.47 of the MMA make reference to the “complaint” or “proposed complaint” which the plaintiff files with the PCF. Additionally, plaintiffs notification to the PCF is referred to under that section as a “request for review” and a “claim.” In Section 1299.47(A)(2)(b), all of these terms appear to be used interchangeably, as follows:
The request for review of the claim under this Section shall be deemed filed on the date of receipt of the complaint stamped and certified by the board or on the date of mailing of the complaint if mailed to the board by certified or registered mail.
A civil action in a Louisiana court “is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction.” La. C.C.P. art. 421. The petition is the Louisiana pleading for institution of a suit in a court of competent jurisdiction. La. C.C.P. art. 891. The Code of Civil Procedure articles regarding the form and content of the petition provide, in pertinent part, as follows:
La. C.C.P. art. 853. Every pleading shall contain a caption setting forth the name of the court, the title and number of the action, and a designation of the pleading....
| ¡¡La. C.C.P. art. 891.... It shall set forth the name, surname, and domicile of the parties; shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation; shall designate an address, not a post office box, for receipt of service of all items involving the litigation; and shall conclude with a prayer for judgment for the relief sought....
From a review of the above authorities, the medical review panel screens or filters potential medical malpractice claims without any adjudicatory power. Petition is not the term utilized under Section 1299.47 for the institution of the medical review proceeding, and not all of the above criteria listed in Articles 853 and 891 would appear to have application. Therefore, we conclude as an initial matter that *1228 the claim presentation or “request for review” for the institution of the proceeding in the non-judicial setting need not precisely fit within the formal pleading requirements for a petition under the Code of Civil Procedure. Nevertheless, the notice given to the PCF must set forth basic material facts upon which the claim for medical malpractice can be screened. That notice is then forwarded to the health care provider covered by the MMA.
What then are those material facts that must be set forth in the claim? Moreover, in view of the issue framed by the Supreme Court in this consolidated appeal, must the applicable standard of care be alleged by the plaintiffs?
The standard of care under general tort theory or duty/risk analysis coincides with the defendant’s duty. “A defendant’s duty ... should be determined by the standard of care which the defendant owes to all potential plaintiffs.” Murray v. Ramada Inns, Inc., 521 So.2d 1123, 1136 (La.1988). |fl Under La. C.C. art. 2315, fault or negligence in á tort action has been said to stem from “conduct which violates the standard of reasonableness in the community, an act that a careful and prudent person would not undertake.” Clark v. I.H. Rubenstein, Inc., 326 So.2d 497, 500 (La.1976). Although a particular statute may impose a duty, the duty may be expressed in a negligence action generally as that standard of care expected from an ordinary prudent person under the same or similar circumstances. In the duty/risk analysis, the duty is an issue of law which is determined by the court. Meany v. Meany, 94-0251 (La.7/5/94), 639 So.2d 229. The court then charges the jury with that duty or standard of care. See, e.g., H. Alston Johnson, III, 18 Louisiana Civil Law Treatise, Civil Jury Instructions, § 3.01 (2d ed.2001).
Nevertheless, in a medical malpractice case, the determination of the standard of care may become dependent at trial upon medical expertise due to the highly technical and scientific nature of the physician’s duty. To establish a medical malpractice claim in the judicial trial setting, the plaintiff must prove the following elements set forth in La. R.S. 9:2794(A):
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
Im(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Thus, the plaintiff must establish the standard of care applicable to the charged physician, a violation by the physician of that standard of care, and a causal connection between the physician’s alleged negligence and the plaintiffs injuries resulting therefrom. Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228.
The defendant/health care providers argue that the plaintiffs must make allegations in these panel proceedings which mirror the burden of proof require *1229 ments under La. R.S. 9:2794(A). In particular, they claim that the plaintiffs must allege the applicable standard of care. In support of this position, defendants cite Section 1299.47(G) which makes reference to the plaintiffs “complaint” while describing two of the conclusions which may be reached by the medical review panel. That section provides, in pertinent part, as follows:
G. The panel shall have the sole duty to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care. After reviewing all evidence and after any examination of the panel by counsel representing either party, the panel shall, within thirty days but in all events within one hundred eighty days after the selection of the last panel member, render one or more of the following expert opinions, which shall be in writing and signed by the panelists, together with written reasons for their conclusions:
(1) The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.
|n(2) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.
[[Image here]]
At trial in the judicial setting, the plaintiff must prove the applicable standard of care through expert medical testimony unless “the physician does an obviously careless act ... from which a lay person can infer negligence.” Pfiffner, supra at 1233. The trier-of-fact, who can be expected in the ordinary tort action to understand and apply the reasonably prudent person standard of care, has no medical expertise regarding the standard of care in a complicated medical malpractice action. In contrast, the medical professionals comprising the medical review panel fully understand and are charged effectively to apply the standard of care by rendering their “expert opinions” in accordance with Section 1299.47(G). By analogy, the standard of care or the physician’s duty presents to the expert panel what the duty element of the duty-risk analysis presents to the trial judge in the ordinary tort action. From the expertise of the panel or the trial judge, as the ease may be, the duty or standard of care is pronounced.
Under our fact pleading system in Louisiana,[2] a requirement to plead such legal duty or standard of care is unnecessary. Spell v. Executive Officers, Directors and/or Shareholders of P & W Indus., Inc., 316 So.2d 474 (La.App. 1st Cir.1975), writ denied 320 So.2d 911 (La.1975). A cause of action cannot be set forth by stating merely the plaintiffs conclusions of law, but the facts must be stated from which such conclusions of law are drawn. Succession of Stafford, 191 La. 855, 186 So. 360 (1939); Montalvo v. Sondes, 93-2813 (La.5/23/94), 637 So.2d 127. Likewise, the expert panel may draw their conclusions regarding the applicable standard of care and whether a breach of that standard occurred from the plaintiffs allegation of the facts of the health care provider’s action or inaction and allegations of the injury that would not otherwise have been incurred. These are the material fact allegations necessary for the malpractice claim or “complaint” for the commencement of the medical review panel proceedings.[3] We therefore interpret *1230 Section 1299.47(G) as directing the panel to conclude whether the factual charges presented by the plaintiffs complaint and the evidence demonstrate that the standard of care was violated.
As a final matter, we must review the MMA’s procedure for challenges to the sufficiency of the plaintiffs complaint to the PCF. In the Perritt case, the defendants employed a “motion to compel” in the district court challenging the plaintiffs letter to the PCF quoted above. The claim letter was filed in evidence in the district court proceeding. The caption of the defendants’ pleading does not govern over its substance. La. C.C.P. art. 865; Metro Riverboat Ass’n. v. Louisiana Gaming Control Bd., 01-0185 (La.10/6/01), 797 So.2d 656. We therefore consider the defendants’ |13pleading as an exception of no cause of action, or alternatively, an exception of vagueness.
The plaintiffs in Perritt argue, nevertheless, that such exceptions are impermissible. Section 1299.47(B)(2)(a) specifically provides for the health care provider’s right to a judicial challenge of the claim pending before the medical review panel, as follows:
A health care provider, against whom a claim has been filed under the provisions of this Part, may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel.
The Perritt plaintiffs insist that this provision only allows for the exception of prescription “pursuant to R.S. 9:5628.” La. R.S. 9:5628 is the statute pertaining to the prescription of claims for medical malpractice.
Despite the plaintiffs’ statutory view, we do not find from the legislative history of Section 1299.47(B)(2)(a) that the allowance for “any exception or defenses” in the district court should be limited by such interpretation. This provision allowing action in the district court by the health care provider was first added to the MMA through amendment in 1982 by Act 674. Act 674 of 1982 provided for the filing of only “the preemptory exception of prescription in court at anytime, without need for completion of the review process.” Later, by Act 435 of 1984, the provision was amended to the existing language, quoted above, allowing for “any exception or defenses pursuant to R.S. 9:5628.” This change in the legislation indicates to us that the single exception or defense of prescription pursuant to La. R.S. 9:5628 can no longer be construed as the Jj^narrow intention of the legislature after the broader terms, “defenses” and “any exception,” were employed in 1984.
Moreover, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10. Louisiana requires fact pleading as initial notice of a civil action. As the Perritt case demonstrates, a plaintiffs “complaint” as required by the MMA can be so vague and deficient in its statement of the claim to warrant the use *1231 of an exception in the district court to obtain clarification of the particular actions of malpractice and the resulting injury to the plaintiff. We recognize that the health care provider and panel members are also afforded the right to an evidentiary deposition of the plaintiff under Section 1299.47(D), discussed below, to thereby obtain more specific information regarding the plaintiffs injury and his understanding of the cause of that injury. Nevertheless, the fundamental procedural concept of notice of the claim at the commencement of a civil action supports our interpretation that the defendant’s exception in the district court was appropriate.
We therefore interpret this procedural provision of the MMA as allowing for the exceptions of vagueness and no cause of action in those cases, such as the present actions, where the health care providers seek a more sufficient statement of the claim. The exceptions can be raised at any time before the completion of the review process. Nevertheless, upon the plaintiffs submission of written evidence of the claim to the medical review panel pursuant to Section 1299.47(D)(1), the sufficiency of the statement of hBthe material facts of the claim should be judged from that evidence in addition to the initial complaint to the PCF. La. C.C.P. art. 1154; Rogers v. Ash Grove Cement Co., 34,934 (La.App.2d Cir.11/2/01), 799 So.2d 841, writ denied 01-3187 (La.2/8/02), 808 So.2d 351.
Regarding the exception of no cause of action, liberal rules of pleading prevail, and each pleading should be so construed as to do substantial justice. La. C.C.P. art. 865; Williams v. State, 34,691 (La.App.2d Cir.5/9/01), 786 So.2d 927, 930. In considering a petition against which an exception of no cause of action has been raised, this court has held that every reasonable interpretation must be accorded its language in favor of maintaining the sufficiency of the petition and affording the litigant an opportunity to present his evidence. Walker v. Interstate Fire & Casualty Ins. Co., 334 So.2d 714 (La.App. 2d Cir.1976); Haskins v. Clary, 346 So.2d 193 (La.1977).
The Perritt claim as revealed in the PCF letter indicates that the four health care providers performed at separate times unspecific acts of health care. The claim does not list the particular injury or injuries suffered by the plaintiff or allege facts of causation linking those injuries to the various unidentified actions of the defendants. As such, the plaintiffs’ claim does not properly set forth a statement of the material facts of the malpractice cause of action. The trial court’s ruling in Perritt is therefore interpreted by this court as a grant of defendants’ exception with the corresponding order to amend the pending claim pursuant to La. C.C.P. art. 934.[4] While the 11frPerritts’ initial PCF claim letter provided some notice or presentation of a demand, it was subject to the defendants’ exception and the requirement to amend the claim. Cf. Batson v. Cherokee Beach and Campgrounds, Inc., 530 So.2d 1128 (La.1988) and In re Medical Review Panel of Wempren v. UHS of New Orleans, Inc., 98-636 (La.App. 5th Cir.1/26/99), 726 So.2d 477, writ denied 99-0545 (La.4/9/99), 740 So.2d 636.
The defendants in Arnold and Richmond did not challenge the plaintiffs’ claims by the filing of exceptions. Instead, *1232 they served the plaintiffs with Interrogatory No. 1 requesting the specifics of each doctor’s actions or inaction. Additionally, in Richmond, the defendant propounded Interrogatories Nos. 2 and 4 requesting a statement of the applicable standard of care and the harm suffered by plaintiff.
The process employed by the defendants in Arnold and Richmond is faulty. First, there was no showing in the district court regarding any insufficiency in the plaintiffs’ claims to the PCF. Without evidence of the plaintiffs’ PCF letters or claims instituting the medical review panel proceedings, the trial court could presume that the information requested in the disputed interrogatories is contained in the initial claims. If not, an exception to the claim and proof of the insufficiency of the statement of the claim may yet be made.
117Second, we do not agree with the ruling in Solomon.[5] Discovery in the present non-judicial proceeding is not in keeping with the intended nature of the proceeding as described by our Supreme Court nor is discovery through written interrogatories expressly provided in the MMA.
The MMA grants immunities and advantages to special classes in derogation of the general rights available to tort victims and therefore must be strictly construed. Vernon v. E.A. Conway Hosp., 33,105 (La.App.2d Cir.4/5/00), 756 So.2d 1249, writ denied 00-1302 (La.6/16/00), 765 So.2d 342; Pendleton v. Batrett, 95-2066 (La.5/31/96), 675 So.2d 720. Section 1299.47(D) of the MMA provides for the form of evidence to be considered by the medical review panel.[6] The section allows for the taking of depositions by the parties or at the request of any two panel members. La. R.S. 40:1299.47(D)(3) and (4).
The text of the law as a whole must be considered when the language of the law is susceptible of different meanings. La. C.C. art. 12. Section 1299.47(D), when considered as a whole, addresses the written evidence |1Rwhich may be obtained for submission to the panel. Its aim is not for a broad discovery process by the parties, but for the submission of evidence to the panel. It does not allow for written interrogatories to be exchanged between the parties. The discovery process for interrogatories in a judicial proceeding can broadly seek otherwise inadmissible evidence “if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.” La. C.C.P. art. 1422. Such a broad discovery right is not expressed within the language of Section 1299.47(D), which must be strictly *1233 construed. Moreover, the general purpose of an efficient non-judicial screening for a medical malpractice claim as set forth in the above jurisprudence would be defeated by an open-ended discovery process and its attendant motion practice for enforcement at the district court level.

Conclusion

The material facts for a medical malpractice claim having not been sufficiently set forth by the Perritts in their PCF letter, the ruling of the district court is hereby affirmed. The trial court’s ruling in Arnold issuing plaintiffs a protective order and refusing to order answers to defendants’ written interrogatory is affirmed. The trial court’s ruling in Richmond ordering plaintiffs to respond to defendant’s written interrogatories is reversed. Costs of the appeal in Perritt are assessed to the Perritts. Costs of appeal in Arnold and Richmond are assessed to the defendants in those cases.
AFFIRMED IN CASE NOS. 35,628-CW AND 35,724-CW; REVERSED IN CASE NO. 35,841-CW.
PEATROSS, J., concurs with written reasons.
BROWN, C.J., concurs/dissents in part with reasons.
WILLIAMS, J., concurs and dissents in part for the reasons assigned by C.J. BROWN.

. The disputed interrogatory in Solomon, supra parallels the interrogatory which is now the focus in Arnold and Richmond. The Solomon interrogatory requested “detailed information concerning 'each and every act of medical malpractice.' " Id. Solomon did not concern an interrogatory requesting the plaintiff to list the applicable standard of care.

. See, Comments to La. C.C.P. art. 854.

. Although the issue is not directly before us, the statement of a cause of action for medical *1230 malpractice in the district court after the conclusion of the panel process would require the same allegations of material facts. By alleging in the petition what a particular tortfeasor did or did not do that resulted in the plaintiff’s injury, the applicable standard of care is indirectly asserted. Through allegations of malfeasance, the plaintiff effectively asserts that the degree of ordinary care of other physicians or health care providers was not followed because the particular act of the physician should not have occurred. In making a claim based upon nonfeasance, the causation allegations necessarily must assert that a particular course of action (the standard of care) which was omitted by the physician or health care provider would have prevented plaintiff's injury.

. La. C.C.P. art. 934 provides, in pertinent part:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.

. The Solomon ruling interpreted La. R.S. 40:1299.39.1(D). The language of Section 1299.47(D) of the MMA, which we now interpret, is identical with the language of La. R.S. 40:1299.39.1(D) which applies to medical review panel proceedings for malpractice claims against the State and its agencies.

. Section 1299.47(D) provides as follows:
(1) The evidence to be considered by the medical review panel shall be promptly submitted by the respective parties in written form only.
(2) The evidence may consist of medical charts, x-rays, lab tests, excerpts of treatises, depositions of witnesses including parties, affidavits and reports of medical experts, and any other form of evidence allowable by the medical review panel.
(3) Depositions of the parties and witnesses may be taken prior to the convening of the panel.
(4) Upon request of any party, or upon request of any two panel members, the clerk of any district court shall issue subpoenas and subpoenas duces tecum in aid of the taking of depositions and the production of documentary evidence for inspection and/or copying.
(5) The chairman of the panel shall advise the panel relative to any legal question involved in the review proceeding and shall prepare the opinion of the panel as provided in Subsection G.
(6) A copy of the evidence shall be sent to each member of the panel.